# Exhibit A

*Matthew Schmel*
*7/22/25*
*@ 1:39 pm*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

ARB PARK, INC.

                                          Plaintiff,

– against -

THE STATE OF NEW YORK, THE NEW YORK
STATE DEPARTMENT OF TRANSPORTATION, and
the Commissioner of Transportation, MS. MARIE
THERESE DOMINGUEZ,

                                          Defendants

Index No. 523159/2025

**SUMMONS**

Plaintiff designates Kings County
as the place of trial. The basis of
this venue is (a) the Plaintiff's
residence and (b) the wrongful
acts that occurred in Kings
County.

---

**TO THE ABOVE-NAMED DEFENDANTS**:

        You are hereby summoned to answer the Verified Complaint in this action and to serve a
copy of your answer, or, if the Complaint is not served with this summons, to serve a notice of
appearance on the Plaintiff's Attorney within twenty (20) days after the service of this summons,
exclusive of the day of service, where service is made by delivery upon you personally within the
state, or, within thirty (30) days after completion of service where service is made in any other
manner. In case of your failure to appear or answer, judgment will be taken against you by default
for the relief demanded in the Verified Complaint.

        Respectfully submitted,


Dated:        Astoria, New York            Frank Seddio, Esq.
              July 10, 2025                 **SEDDIO & ASSOCIATES, P.C.**
                                            1 Metrotech Center, Suite 1803
                                            Brooklyn, New York 11201
                                            (718) 272-6040
                                            fseddio@seddiolaw.com

                                            Vincent Miletti, Esq.
                                            **MILETTI LAW, P.C.**
                                            10 Halletts Point, Suite 1742
                                            Astoria, New York 11102
                                            (609) 353-6287
                                            vmiletti@milettilaw.com
                                            *Co-counsel to Plaintiff*

To:   New York City Managing Attorney's Office
       Office of the New York State Attorney General
       28 Liberty Street, 16th Floor
       New York, NY 10005
       (800) 771-7755 (Phone)
       *Attorney for Defendants*

       Timothy B. Lennon, General Counsel
       New York State Department of Transportation
       Division of Legal Affairs
       50 Wolf Rd
       Albany, New York 12232
       (518) 457-2411
       *Attorney to be Noticed*

       Marie Therese Dominguez, Commissioner
       New York State Department of Transportation
       Division of Legal Affairs
       50 Wolf Rd
       Albany, New York 12232
       (518) 457-2411
       *Attorney to be Noticed*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

ARB PARK, INC.

                                                      Plaintiff,

– against -

THE STATE OF NEW YORK, THE NEW YORK
STATE DEPARTMENT OF TRANSPORTATION, and
the Commissioner of Transportation, MS. MARIE
THERESE DOMINGUEZ,

                                                      Defendants

---

Index **No.** 523159 /2025

**VERIFIED COMPLAINT**

ARB PARK, INC. ("ARB" or "Plaintiff"), through its President, Mr. Abdul Rauf Bhally ("Mr. Bhally") (collectively, the "Plaintiffs"), brings this complaint against THE STATE OF NEW YORK ("SONY"), THE NEW YORK STATE DEPARTMENT OF TRANSPORTATION ("DOT"), and the Commissioner of Transportation, MS. MARIE THERESE DOMINGUEZ ("Dominguez") (collectively, "Defendants") by its attorneys, FRANK R. SEDDIO, ESQ., from Seddio & Associates, P.C., and VINCENT MILETTI, ESQ. from Miletti Law, P.C., hereby alleges as follows:

## PRELIMINARY STATEMENT

1.    In a city renowned for its vibrant diversity and cherished for being a beacon of opportunity, the discriminatory actions detailed in this lawsuit stand as a glaring contradiction to New York's esteemed reputation. Plaintiff ARB Park Inc., led by Mr. Bhally, a devout Muslim and Pakistani entrepreneur, has sought nothing more than the opportunity to operate its business in accordance with the law and the spirit of New York's anti-discrimination principles. Yet, what they

have faced is a sustained campaign of bias and exclusion at the hands of the New York State Department of Transportation (DOT) and its affiliates.

2.      At the heart of this situation lies an egregious violation of civil rights embodied in 42 U.S.C. § 1983, which should serve to protect individuals from exactly the kind of inequitable treatment ARB has endured. The intent behind this lawsuit is to not only seek justice for ARB, but also to reinforce the importance of equal protection under the law for all, regardless of their religion or national origin.

3.      From the onset of the Plaintiff's germane and good faith bid to secure property for its business operations, the illogical and combative responses from the DOT became increasingly apparent. Despite ARB being the sole entity to bid on the premises [not to mention the only entity with a proper license and true use Permit], Plaintiff was met with unwarranted hostility, culminating in a slew of obstacles seemingly designed to frustrate their every effort. Most shockingly, these actions unfolded in stark contrast to the favorable treatment of at least 14 other businesses in the same area, none of which are subjected to the same rigorous scrutiny or enforcement, and that conspicuously lack any Muslim or Pakistani ownership.

4.      As a corporation that dutifully followed all procedural protocols, ARB had every reason to expect a fair process. Instead, it has faced arbitrary enforcement actions, selective targeting, and a blatant disregard for their constitutional due process rights—all actions starkly at odds with New York's anti-discrimination laws and values, particularly in light of the 2019 amendments, where this became a matter of public policy. The sequence of events—from the initial bidding process to the erratic handling of permits and penalties, to the multiple forums and endless attempts to harm and hurt Plaintiff—clearly demonstrates a pattern of a hostile,

discriminatory environment, targeted and rooted in discriminatory animus against Muslims and Pakistani individuals and businesses.

5.      This suit brings to focus the alarming implications of such discrimination, which not only harm the targeted enterprise but also threaten the foundational values of fairness and openness on which this city was built. As the matter proceeds, this case stands as a crucial test of our collective commitment to uphold justice and equality. It is an urgent call for accountability and an earnest plea for restoring rights to those unfairly marginalized. It almost appears that the DOT is determined to drive Plaintiff and its owner into poverty, along with all their employees and dependent family members.

6.      In seeking redress, Plaintiff implores this Court to consider the logical inconsistencies and violations detailed herein and the emotional and economic toll such relentless discrimination imposes. This is not merely a case about property or permits; it is a struggle for dignity and equal treatment within a framework of laws designed to protect the very diversity that enriches New York. Let this suit be a rallying point for reflection and reform, so that New York remains not just a city of dreams but a steadfast defender of justice for all its residents.

## **PARTIES**

7.      Plaintiff ARB PARK INC., at all times hereinafter mentioned, was and still is a domestic corporation duly organized and authorized to do business under the laws of the State of New York with its principal office and place of business at 8301 Bay Parkway, Apt. 404, Brooklyn, New York 11214. Mr. Abdul Rauf Bhally serves as the president of ARB.

8.      That at all times hereinafter mentioned, Defendant THE STATE OF NEW YORK is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

9.     That at all times hereinafter mentioned Defendant THE NEW YORK STATE DEPARTMENT OF TRANSPORTATION, is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

10.     That at all times hereinafter mentioned, Defendant NEW YORK STATE DEPARTMENT OF TRANSPORTATION, on behalf of THE STATE OF NEW YORK, is an independent municipal entity with a principal place of business at 50 Wolf Road, Albany, New York 12232.

11.     That the named Defendant, MS. MARIE THERESE DOMINGUEZ, serves as the Commissioner of Transportation and is a necessary party to this lawsuit.

12.     At all times hereinafter mentioned, the named Defendant NEW YORK STATE DEPARTMENT OF TRANSPORTATION was and is a department of the New York State government organized and existing under and by virtue of the Highway Law of the State of New York and authorized to do business in the State of New York with a Main Office for the transaction of business located at 50 Wolf Road, Albany, New York 12232.

13.     At all times hereinafter mentioned, Defendant NEW YORK STATE DEPARTMENT OF TRANSPORTATION was and is an "agency," as that term is defined in Public Officers Law § 86(3).

## JURISDICTION & VENUE

**a.  Jurisdiction In State Court Is Proper.**

14.     This Court has jurisdiction over this action pursuant to CPLR § 301, § 302, § 503, and § 506(b) respectively, and the common law of the State of New York. The cause of action arises from events that occurred in the city of New York, particularly Kings County.

**b.  Venue in Kings County is Proper.**

15.     Venue is further proper in Kings County pursuant to CPLR § 503 because (i) the Plaintiff's principal business domicile is in Kings County and (ii) a substantial part of the events or omissions giving rise to the claim occurred in the County.

**c.  Notice of Claim Is Not Required For Actions Concerning Rights Violations.**

16.     For clarification, a notice of claim is not required to assert a claim for civil rights violations (See *Swinton v. City of New York*, 61 AD3d 557 (1st Dept 2009)). Plaintiff in this matter has elected to go directly to the State Court to address his claims of discrimination and civil rights violations.

17.     The claims herein are violations of 42 USC § 1983 and other civil rights violations, and as such, are within the relevant statute of limitations, underscoring that the Plaintiff's federal claims are timely (See *Vargas v. City of New York*, 105 AD3d 834 [2d Dept 2013]).

<u>**SERVICE OF PROCESS**</u>

**a.  The State of New York.**

18.     Service was rendered on SONY in accordance with CPLR § 307 by delivering the papers to an Assistant Attorney General at an office of the Attorney General, or to the Attorney General within the state.

**b.  The New York State Department of Transportation & The Commissioner.**

19.     Service was rendered on the NEW YORK STATE DOT via by (i) delivering the summons to such officer, or the chief executive officer of such agency, or to a person designated by such chief executive officer to receive service, (ii) by mailing the summons by certified mail, return receipt requested, to such officer or the chief executive officer of such agency, (iii) by personal service upon the state in the manner provided by subdivision one of this section" (See CPLR § 307 [2]).

20.    Service was rendered on the Commissioner of Transportation MS. DOMINGUEZ by (i) delivering the summons to such officer, or the chief executive officer of such agency, or to a person designated by such chief executive officer to receive service, (ii) by mailing the summons by certified mail, return receipt requested, to such officer or the chief executive officer of such agency, (iii) by personal service upon the state in the manner provided by subdivision one of this section" (See CPLR § 307 [2]).

## FACTS COMMON

a.  **The Onset of Discriminatory Treatment In December 2021, Subtle But Present.**

21.    Plaintiff ARB, formed within the State of New York, is engaged in the business of owning and operating a parking lot.

22.    Defendant DOT, through SONY, is the municipal owner of the real property located at 120-20 152d Avenue 128-20 152d Avenue, South Ozone Park, New York 11420, County of Queens (hereinafter the "Premises").

23.    ARB was formed on or about March 8, 2019 to advance the business's operational and administrative needs. ARB had a principal domicile for business operations at 8301 Bay Parkway, Apt. 404, Brooklyn, New York 11214. The sole managing member for ARB was Mr. Bhally, as President.

24.    On December 3, 2021, ARB placed a bid on the property and submitted a check in the amount of $170,150 for purposes of securing the Permit for the Premises. The DOT received and deposited the check on or about December 20, 2021.



25.     Due to no fault of Plaintiff, the check was returned, with a message identifying the reason as a "Chargeback, Refer to Maker."

26.     During this time, ARB paid a monthly Permit Fee in the amount of $30,850, back check No. 84146879, which was cashed and accepted by the DOT, for the right to use the Premises for December 2021.

27.     On December 2, 2021, Mr. Bhally exchanged a series of emails with the DOT looking to secure a key for the Premises, as ARB was the only entity to bid on the Premises. The DOT had responded by advising that the DOT has yet to provide final approval, and upon that approval, Mr. Bhally would be notified accordingly.

28.     It was a December 2, 2021 email that began a string of arbitrary and unusually aggressive communications, refusing to work or communicate with Mr. Bhally. At the time, Mr. Bhally was under the impression that this matter was being managed in good faith by the DOT and its affiliates.

29.    On December 14, 2021, Plaintiff emailed the DOT concerning issues with securing insurance coverage for the Premises without knowing if ARB had the full right to operate on the entire Premises and asked for assistance.

30.    On December 20, 2021, the DOT responded to Plaintiff dismissively, reminding Mr. Bhally that **final approval is only granted by the DOT and that Plaintiff was an intruder** (notwithstanding the fact that the DOT accepted and cashed the monthly Permit Fee to use the Premises).

31.    Ironically, while the DOT, on December 20, 2021, argued that Plaintiff was an intruder on the Premises, the DOT was more than happy to accept and cash the "*Permit and Use*" fees paid by Plaintiff. Plaintiff in possession of all payments during the "intruding" period.

32.    In an unusual twist, on February 16, 2022, the DOT notified Plaintiffs that they were the successful bidder, with a monthly Permit Fee of $201,000, permit # 1428 ("Permit #1428").

33.    Plaintiff immediately rejected the terms of Permit #1428. On February 17, 2022, Counsel for Plaintiff submitted a letter objecting to the terms of Permit #1428, advising that they were premeditated on fraud and corruption. See Plaintiff at the time retained Counsel and opposed the terms of Permit #1428.

34.    On February 17, 2022, according to the correspondence submitted by Plaintiff, the bid was immediately rejected (1) because the DOT failed to meet the terms of the language of the bid, as they failed to provide the keys to Plaintiff, (2) based on the excessive cost of the monthly Permit Fee of $201,000, which was on its face fraudulent (especially because in June, the DOT took the position that the "fair market value" was $74,000), (3) since ARB was subjected to adverse and disparate treatment, and (4) based on the fact that the DOT received, accepted, and cashed the

payment in December in the amount of $30,850 as the monthly Permit Fee, they accepted the offer as originally offered by Plaintiff, and that unless the DOT upheld their promise of $30,850 a month, the bid was to be rescinded.

35.     On February 28, 2022, Counsel for Plaintiff submitted a formal response memorializing the facts as specified in the February 17, 2022 correspondence.

36.     On March 9, 2022, the DOT issued a Notice of Quit to ARB, holding that they must vacate the Premises by March 19, 2022.

37.     At this point, the DOT began refusing Permit Fee payments. They returned Permit Fee payments for March 2022, April 2022, and May 2022.

38.     On March 29, 2022, the DOT sent a formal letter to ARB demanding that they vacate the Premises.

39.     On April 1, 2022, the DOT sent a Notice of Order & Fine ("Notice of Violation" or "NOV") to ARB, advising that ARB was operating a long-term parking facility illegally, in violation of Highway Law § 52.

40.     Ironically, about 20 other entities were in the same location at the time; however, ONLY ARB was subjected to such treatment. Unlike the other companies occupying the property, the only distinguishing factor regarding ARB is that ARB is a Muslim-owned and Pakistani-owned business.

41.     Regardless, the story goes on. On or about April 27, 2022, the DOT sent a Notice to Appear to ARB, in which a hearing was to be held on May 17, 2022 from 12 PM to 4 PM, before the Administrative Law Judge, Ms. Alicia McNally ("Ms. McNally").

42.     On May 17, 2022, Counsel for ARB and Plaintiff were in attendance to address the Notice to Appear. On behalf of the DOT was Mr. Thomas Parisi ("Mr. Parisi"), the Senior Attorney

handling this matter, and Ms. Kathleen Joy ("Ms. Joy"), the Director of Right of Way. Once the terms were reached among Plaintiff, Mr. Parisi, and Ms. Joy, the parties took the terms to Ms. McNally, the Administrative Law Judge ("ALJ"), who heard the case in open Court.

43.    At the May 17, 2022 Hearing, Plaintiff and Defendants agreed to the following:

a.    The NOV, No. 2022-0004, was hereby terminated.

b.    The penalty was reduced to $25 per day instead of $1,000 per day. The total agreed-upon penalty would be $4,175 for 167 days.

c.    The Permit Fee to be applied from January 2022 through July 31, 2022 would be $156,000.

d.    The total settlement amount was $160,175. This number was inclusive of the original $30,850 (reduced to $30,000 for the Settlement) deposit given back in December 2021, an additional $100,000 payment, and a subsequent $30,000 that would be made.

e.    The original deposit for the Use & Occupancy Permit, $30,850, was reduced to $30,000 and applied toward the total settlement amount of $160,175.

f.    In open Court, before the ALJ, the NOV was to be dismissed with prejudice upon approval of a written stipulation.

g.    The Plaintiff would make the payments in good faith, while the DOT was responsible for drafting the Stipulation of Settlement by May 18, 2022.

h.    The Stipulation of Settlement was to be signed and appropriately ordered by the ALJ on June 1, 2022.

i.    The payments were to be made by the Plaintiff in good faith, with one payment being $100,000 and a second payment being $30,175 (both constituting the

Settlement Monies), in consideration and exchange for the expeditious execution of the Stipulation of Settlement.

44.    After the Hearing in open Court, on the same day, May 17, 2022, ALJ McNally emailed all the parties, confirming the Settlement and Agreement, saying **"I thank you all for taking the time to discuss and resolve this matter today."**

45.    The certified check in the amount of $100,000, Check No. 84373242-6, drawn from TD Bank, was sent via overnight mail to the DOT, shipping label no. EJ507573280US and confirmed delivery. The certified check and the additional $30,000 retained by the DOT constitute the "Settlement Monies."

46.    At that time, it was our understanding that on or about May 25, 2022, the DOT cashed the certified bank check.

47.    Unfortunately, by June 1, 2022, the whole drama began to unravel, and the Defendants' campaign of discrimination was set to full display.

b.    **Defendants' Discriminatory Campaign On Full Throttle.**

48.    On June 1, 2022, the undersigned received notice from Plaintiff that the DOT had randomly visited the Premises. No other premises received visitors, only the Plaintiff's Premises, where 3 other DOT members attempted to intimidate Plaintiff. The DOT came in unannounced, hostile, started to move ARB's personal belongings, take images and pictures, and otherwise trespass on property that was legally in possession of ARB, of which ARB was entitled to control and operate on. Thus, the DOT trespassed on the Premises, rightfully in possession of ARB, a company owned and operated by a Muslim, Pakistani individual, without committing such similar acts on the neighboring properties, owned and controlled by individuals who are not Muslim or Pakistani.

49.     A week later, on or about June 9, 2022, the same thing occurred—the DOT arrived at the Plaintiff's Premises unannounced and hostile, but did not invade any other Premises in the location. They continued to intimidate Plaintiff by moving ARB's personal belongings, taking images and pictures, and otherwise trespassing on property that was legally in possession of ARB, of which ARB was entitled to control and operate on. Thus, now for the 2nd time in 2 weeks, the DOT trespassed on Premises rightfully in possession of ARB, a company owned and operated by a Muslim, Pakistani individual, without committing such similar acts on the neighboring properties, owned and controlled by individuals who are neither Muslim nor Pakistani.

50.     On June 9, 2022, the DOT sent a letter to Plaintiff, advising that the Settlement was no longer valid, that Plaintiff was responsible for paying approximately $600,000 in past Permit Fees and penalties, and that Plaintiff was required to execute a Warranty of Eviction with a $1.4 million penalty. In a pretentious attempt to save face, continued on the June 9, 2022 notice, the DOT advised Plaintiff that:

> Obviously, these terms are different from what was initially proposed but we would still like to know if a settlement is possible. If not, we will re-notice this matter for another hearing date and proceed accordingly through our administrative process as well as through all other available avenues to seek any and all potential remedies and damages against your client.

*(Excerpt of June 9, 2022 email from Mr. Thomas Parisi)*

51.     What was telling is that their June 9, 2022 communication indicates that as of **June 8, 2022**, they would "like to know if a settlement is possible" and that "… if not, we will re-notice this matter for another hearing date and proceed accordingly through our administrative process as well as through all other available avenues to seek any and all potential remedies and damages against your client." However, the fact is that they had already made their decision the date before on **June 8, 2022**. So, by June 9, 2022, this was a farce to save face and make it look like it wasn't riddled with discriminatory animus.

52.     On **June 13, 2022**, Counsel for Plaintiff received a copy of a Notice to Appear stamped **June 8, 2022**. It would appear that the communication dated June 9, 2022, in which Defendants attempted to deceive Plaintiff into believing that there was room for communication and further negotiation, but the reality is that the decision to illegally disregard and revoke the Settlement entered into on May 17, 2022 had already been made. The Hearing was set for June 27, 2022 and the future of Plaintiff was already sealed.

53.     Between June 27, 2022 and August 30, 2022, a series of exchanges were shared, all of which only sought to pressure Plaintiff, without any sort of consideration for the Plaintiff's due process rights. Numerous emails from Plaintiff to Defendants addressed the following issues:

    a.  ARB believed that DOT was acting in a manner that was completely arbitrary and capricious, which blocked Plaintiff from even presenting his case before the DOT;

    b.  That there was no procedural unfairness to the DOT;

    c.  That there was no inconvenience posed to the DOT to permit ARB to prepare their case;

    d.  That the balance of the need for efficient and expeditious adjudication of this case, and the need for full and fair consideration of the issues relevant to the case, demanded a more sensitive touch, and not this brutal behavior by the DOT;

    e.  That the DOT had no right to rescind the Settlement Agreement;

    f.  That the Settlement was bargained for, consideration given and received, and on the record;

    g.  That the bank check was cashed and was never returned;

    h.  That the tentative language was related to the § 52 Settlement Letter, which was supposed to be replaced by a full settlement agreement, and;

i.   That intrusion was not an issue because ARB was rightfully on the property.

54.   All of these arguments fell on deaf ears—and while hindsight is 20/20—this was all grounded in nothing more than the invidious discriminatory campaign that the DOT engaged in based on their disgust with ARB's national origin [Pakistani] and religion [Muslim]. As we will discuss below, this becomes all the more evident because even to this day, at the time of filing this Complaint, there are at least 20 other entities in the same location that do not suffer the same sort of hostile treatment as ARB.

55.   At this time, Plaintiff sought relief from the State Court and the Court of Claims, but that did not stop the DOT from their campaign of aggression and discrimination.

56.   Plaintiff filed a lawsuit in State Court and asked to stay the proceedings before the DOT until the parties could resolve the legal issues underlying this action.

57.   The DOT ignored the communications sent from Plaintiff on July 21, 2022, July 27, 2022, August 15, 2022, and August 22, 2022.

58.   On the morning of August 30, 2022, after numerous follow-ups from Plaintiff concerning the letter motion to stay this proceeding, Plaintiff was advised that the then-assigned ALJ at the time was going to assign the determination to the newly assigned ALJ, Mr. Dustin Howard, who took on the case with absolutely no prior knowledge and no preparation. The fact is that this meant nothing because when your campaign is based on discrimination, harassment, and hate, what do you care, right? You don't need to prepare papers if your goal is just to give the impression of a proper hearing, when in reality, you are a hitman against ARB, and discriminatory against Muslims and Pakistanis.

**c.   The Partial, Discriminatory Hearing Before The DOT.**

59.     On the morning of August 30, 2022, without any regard for (a) the closely held religious practices of Mr. Bhally, who is a devout Muslim, celebrating the year of Hijra, the first month known as Muharram, which began on August 9, 2022, (b) the fact that Mr. Bhally was in Pakistan as a result of the holiday with his family since early August 2022, celebrating the year of Hijra, (c) waking an unprepared Plaintiff from his slumber as Pakistan is 9 hours ahead of New York, and (d) with complete disregard of Mr. Bhally's limited ability to speak English fluently without accommodation, the DOT simply went ahead and decided to continue their discriminatory campaign and targeted hate of individuals who are devoutly Muslim and Pakistani.

60.     The Hearing proceeded in a manner that was simply unfair, partial toward the DOT, rife with a discriminatory animus, and in violation of the due process protections established by the law against Plaintiff. As stated, at the time, Plaintiff was out of the country, on holiday, in a different time zone, and with limited ability to comprehend complex English. If the whole matter hadn't been riddled with invidious discrimination, the automatic stay would have been applied. However, as it has been the case with the DOT, and due to the unfair process and systemic violations from the DOT, with their invidious hate and discrimination, on the day of the Hearing, Plaintiff was forced to wake from his sleep at 1 AM, with no regard at all with his capacity and mental state concerning his ability to provide a compelling testimony, and immediately thrown into a trial examination by the DOT.

61.     For an agency that delayed this process for months and found it no problem to ignore our communications for the entire month of August (let alone ignoring the requirements in the CPLR and APA), simply another week to not only adequately prepare the client, but also to show a slight bit of mercy and civility toward another human being, would not have been an issue. Instead, in their typical fashion, the DOT cares less about the rules, cares less about your religious

values, have no interest in preserving the rights of Muslims or Pakistanis, care nothing about who they impact or what they do—they just march along, without strategy and proper planning, without due process, without fairness, without logic, and only with hate and discrimination.

62.     The Final Decision & Order was rendered on December 30, 2022, signed by ALJ Dustin B. Howard, on behalf of the Office of Proceedings, granting Defendants their desired outcome and denying Plaintiff their rightful position against the Notice of Violation. No surprise here.

63.     Lawsuits were filed in response, and to this date, the case continues before the Supreme Court of New York, County of Queens, captioned *ARB Park Inc. v. The New York State Department of Transportation et al.*, Index # 701472/2023. The appeal in this matter is captioned *ARB Park Inc. v. The New York State Department of Transportation et al.,* Index # 2023-10305 ("Appellate Matter"), which was finally fully briefed on March 17, 2025.

**d.  The DOT's Continued Discriminatory Campaign, Now On Multiple Forums.**

64.     Disappointed that Plaintiff was aware of the hate and discriminatory treatment and continued asserting his rights at the time, Defendants changed tactics by involving their friends in other state agencies to further intimidate Plaintiff.

65.     As stated above, on **January 20, 2023**, Plaintiff filed an Article 78 Petition captioned *ARB Park Inc. v. The New York State Department of Transportation et al.,* Index # 701472/2023 ("**Original Proceeding**"), pending in the Supreme Court of New York, Queens County, before the Hon. Judge Mojgan Lancman.

66.     That case resulted in some issue with service (not on the merits). An appeal was filed based on the service issues, and a perfected appeal was filed in a matter captioned *ARB Park*

*Inc. v. The New York State Department of Transportation et al.,* Index # 2023-10305 ("Appellate Matter"), pending in the Appellate Division, 2nd Department.

67.    During this time, the DOT, furthering their campaign of the invidious discriminatory treatment against Plaintiff based on his religion [Muslim] and national origin [Pakistan], requested the assistance of their friends at the Department of Consumer & Worker Protection ("DCWP"), who now attempted to challenge ARB.

68.    The DCWP attempted to rescind the License of ARB on the grounds that, because ARB was in violation of Highway Law § 52 and the Notice of Violation, Plaintiff was essentially unable to maintain its DCA License, leading to its immediate termination.

69.    In response to their attempts, Plaintiff filed his own Petition on **December 11, 2023**, in a matter captioned *ARB Park Inc. v. The New York City Department of Consumer & Worker Protection ("DCWP"),* Index # 162180/2023 ("DCWP Matter"), pending in the Supreme Court of New York, New York County, before the Hon. Judge Nichoals Moyne ("Hon. Judge Moyne").

70.    In **December 2023**, ARB had received a visit from what was believed to be DOT agents, and had their License physically seized by the DOT agents, notwithstanding our continued appeal and invocation of the 4-month period to file this proceeding. The DOT's agents came blazing in without even minimum courtesy or respect for the business. They started taking pictures while helping themselves onto the property and entering locations without concern for maintaining an orderly process, and eventually ripped the actual physical License off the wall. The DOT referred this matter to OATH for Enforcement. When the two very rude agents, inspectors M. Patikoglou, Badge No. 822, & M. Delaguila, Badge No. 720, were intruding on the place, they left Plaintiff with a Certificate of Inspection No. A0145457 and a Summons, Violation # 23Q03168 alleging unlicensed activity. As such, this is yet another example of the DOT using the arm of the

state government to only further oppress Plaintiff, and to continue engaging in the invidious discriminatory treatment based on the Plaintiff's religion [Muslim] and national origin [Pakistan].

71.     In **January 2024**, ARB received a second visit from what was believed to be DOT agents—a pure hit job this time—coming in and leaving Plaintiff with another Certificate of Inspection No. A0151496 and a Summons, Violation # 24Q00186 alleging unlicensed activity. Again, another round of the DOT using the arm of the state government to only further oppress Plaintiff, and to continue engaging in the invidious discriminatory treatment based on the Plaintiff's religion [Muslim] and national origin [Pakistan].

72.     On **February 12, 2024**, a hearing took place before the Hon. Judge Moyne in the DCWP Matter, who discussed the significant overlap in the matters facing ARB, and as a result, ordered that the DCWP was not permitted to revoke the Respondent's License pending the determination in the Appellate Matter.

73.     On **March 12, 2024**, and Decision & Order was published, rendered by the Hon. Judge Moyne in the DCWP Matter, placing a stay on any decision to terminate ARB's DCA License.

74.     In light of the favorable decision concerning the injunction, maintaining that the Plaintiff's License was still in effect and the status of whether or not their License could be rescinded was based on the result of the Original Proceeding considering that Plaintiff had sent multiple communications to OATH [the Office of Administrative Tribunals and Hearings] asking that (i) OATH put a stay on any sort of enforcement on the grounds that the License was still active until a firm decision, and (ii) to demand the DOT and DCWP stop engaging in their discriminative and oppressive behavior. OATH did great in demanding adjournment for the time being, but that

didn't stop the DOT from continuing their campaign of invidious discriminatory treatment against Plaintiff based on his religion [Muslim] and national origin [Pakistan].

75.    Persistent to continue their oppression against Plaintiff based on his religion [Muslim] and national origin [Pakistan], not happy that the DCWP was thwarted, ashamed that OATH had adjourned the Hearing, the DOT decided to try this case in the Civil Court of Queens.

76.    On or about **October 23, 2024**, the New York State Commissioner of Transportation ("Commissioner") filed a Petition, Case # LT-31716-24/QU in the Queens County Civil Court, against ARB looking to (1) remove ARB from the property, and (2) secure reasonable value for the occupancy from Feb. 14, 2022 through the vacate date.

77.    In response, on **January 21, 2025**, ARB filed a Motion to Dismiss on 2 grounds: (a) pursuant to CPLR § 3211(a)(4) dismissing the complaint in its entirety since there were other actions between the same parties, for the same cause of action, currently in 3 separate forums, and (b) pursuant to 22 NYCRR §130-1.1, imposing monetary sanctions on Petitioner, including the Respondent's reasonable attorney's fees incurred in connection with the instant application.

78.    On **March 31, 2025**, Plaintiff participated in a hearing before the Court and pleaded with the DOT to enter into settlement discussions. However, the DOT refused, indicating that there was no interest in renting the property to a parking lot since they wanted to (a) use the property for purposes of construction on the Van Wick Construction and (b) use it as a Truck Inspection Station.

79.    It was this exchange of comments that led us to finally conclude this matter was fueled by pure discrimination against Pakistani Muslims, as **we are well aware of at least 14 other lots that operate on the same area—operating parking lots, and the owners of those parking lots are either Chinese, Italian, French, or Jewish-American.**

**e.    Exploring the Defendants' Discriminatory Campaign Against Plaintiff.**

80.     Beginning on or before December 2021 until the present date, Defendants have been selectively targeting Plaintiff, asserting multiple causes of action, bringing cases in multiple forums, seeking assistance from multiple state agencies, and overall engaging in a campaign of malicious litigation violating numerous rules, Court Orders and other protections that are to be enjoyed by Plaintiff, and doing so simply due to their discriminatory animus toward Mr. Bhally based on his religion [Muslim] and national origin [Pakistan].

81.     The selective targeting becomes evident on its face when you take a step back and notice that other businesses that operate in the same exact location do NOT have licenses, do NOT have use permits, and do not even operate legitimate businesses, but the DOT doesn't bat an eye against them.

**a.  Comparators Without DCWP License or DOT Permits.**

82.     While we have taken notice of at least 14 comparators in total on the location, there are a few that stand out, including but not limited to:

a.  **Long Term Parking Lot 9** operates out of Aqueduct Rd, Jamaica, NY 11430. Based on the public records and the Plaintiff's personal knowledge, the owner of this particular Parking Lot is believed to be Mei Zheng, who is also believed to be of <u>Chinese</u> descent, and is otherwise not Muslim, and not Pakistani. It is our understanding that Mei Zheng does not have a DCWP license or a use permit with the DOT. Why is Long Term Parking Lot 9 permitted to operate without a use permit or DCWP license?

b.  **JFK Long Term Parking Inc.** operates out of 122-02 S. Conduit Avenue. Based on the public records and the Plaintiff's personal knowledge, the owner of this particular Parking Lot is believed to be Mr. Ed Casello. Mr. Ed Casello

is believed to be of <u>Italian</u> descent, otherwise not Muslim, and not Pakistani. It is our understanding that Mr. Ed Casello does not have a DCWP license or a use permit with the DOT. So, why is JFK Long Term Parking Inc. permitted to operate without a use permit or DCWP license?

c. **C&D JFK Long Term Parking** operates out of 146-09 Farmers Blvd. Based on the public records and the Plaintiff's personal knowledge, the owner of this particular Parking Lot is believed to be Mr. Charlemagne Dumay. Mr. Charlemagne Dumay is believed to be of <u>French</u> descent, otherwise not Muslim, and not Pakistani. It is our understanding that Mr. Charlemagne Dumay has neither a DCWP license nor a use permit with the DOT. Again, why is C&D JFK Long Term Parking permitted to operate without a use permit or DCWP license?

d. **Bolt Parking, LLC** operates out of 150-30 135th Avenue, Jamaica, New York 11434. Based on the public records and the Plaintiff's personal knowledge, the owner of this particular Parking Lot is believed to be Mr. Abraham Schwartz, and also believed to be <u>Jewish,</u> otherwise not Muslim, and not Pakistani. It is our understanding that Mr. Abraham Schwartz has neither a DCWP license nor a use permit with the DOT. Still, why is Bolt Parking, LLC permitted to operate without a use permit or DCWP license?

e. **Purchase Park 2 Fly** operates out of 124-10 S. Conduit Avenue. Based on the public records and the Plaintiff's personal knowledge, the owner of this particular Parking Lot is believed to be Mr. Anthony Preza, who is of Italian descent. Mr. Anthony Preza is not Muslim, and not Pakistani. It is our

understanding that Mr. Anthony Preza does not have a DCWP license. However, while we are unable to confirm this at the moment, Mr. Anthony Preza is believed to have entered into some sort of lease or use permit with the DOT. If this is the case, why is Mr. Anthony Preza then permitted to operate on the property without a DCWP license, and why is he allowed to have preferential treatment and enter into a use permit?

83.    The fact of the matter is, particularly with Mr. Anthony Preza, who has a LONG history of litigation with the DOT and SONY, as well as multiple issues with the attorney general's office, there is simply no justification for the selective and unilateral enforcement against ARB other than discrimination for his religion and national origin.

84.    These oppressive and selective targeting polices of the DOT issuing multiple violations to ARB, asking the DCWP to get involved, sending this numerous times for OATH referrals, even in light of a clear injunction in the DCWP matter demanding that ARB be left alone for the time being, through the decision on appeal, has been persistent and continuing since December 2021.

85.    From December 2021 to the present, ARB has received numerous fines, resulting in tens of thousands of dollars being spent on litigation. There is simply no rational basis for the extreme targeting of ARB, except for the fact that Mr. Bhally belongs to the unwanted religion and national origin, to the disgust of the DOT.

**b. The Defendants' Actions Demonstrate a Pattern of Discrimination Against Plaintiff Based on Religion [Muslim] and National Origin [Pakistani].**

86.    Beginning on or about December 2, 2021, the DOT initiated a pattern of behavior that, when viewed in its totality, demonstrates a discriminatory animus against Plaintiff, whose principal owner is a Muslim Pakistani individual.

87.     On December 2, 2021 and December 14, 2021, despite communications showing that Plaintiff was operating on the right of all use and cashing and accepting payments, a chain of unhelpful and aggressive statements was sent.

88.     The DOT refused to recognize routine documents and did not apply the same process given before the law, while cashing all checks for use.

89.     On February 16, 2022, the DOT notified Plaintiff of being a successful bidder. Instead of working a rate aligned with the bid won and accepted, a rate of $201,000.00, which flew in the face of previous estimates, constituted an excessive license fee and was far outside the range of acceptability.

90.     From February 2022 to August 30, 2022 of that year, the communications were a constant disregard of all motions and proceedings and a constant refusal to even the simplest requests. All motion to stay and continue was ignored while the process and Hearing moved on and forced ARB to participate without care.

91.     These actions were only further proof of the DOT's bias to proceed with the Hearing on a holy day, the first holy month of the Muslim calendar year, that Plaintiff was celebrating, refusing even to consider any accommodation, and even refusing to permit his holiday, or that his first language was not English.

92.     While the constant refusal of communications underscored the Defendants' unlawful policies and utter disregard for due process, their underlying acts have been a constant reminder of their campaign of discrimination and hate.

93.     There were other areas where Defendants should have taken corrective action, particularly since Plaintiff was perhaps the ONLY company at the location that had a DCWP

License, but due to Mr. Bhally's religion and national origin, the DOT only acted to the detriment of Plaintiff.

94.    During the years, while treating Plaintiff disparately and forcing Plaintiff to quit became the norm, the DOT has created and put in place every type of obstacle to intimidate Plaintiff, all fueled by discrimination based

95.    on his religion [Muslim] and national origin [Pakistani]. Had this not been the case, Plaintiff would have operated without a hitch, just like the rest of the parking lots at the location. But alas, he is a Muslim and Pakistani, and the New York DOT loathes Muslims and Pakistanis.

96.    Because of the DOT's actions and inactions, including the other State Agencies they seek such favors from, Plaintiff has been subject to high levels of discrimination, which is predicated on Mr. Bhally's religious and national origin.

   c.  **Statistics Evidencing The Already Discriminatory Treatment Suffered by Those of Pakistani Descent & Muslim Religious Beliefs.**

97.    The Defendants' tactics of solely targeting ARB, and treating them in a discriminatory fashion based on their religion [Muslim] and national origin [Pakistani] appear to be part of a discriminatory animus that permeates throughout New York State and New York City.

98.    Recent studies have shown that a significant percentage of Muslim adults (23.2%) reported religion-based harassment from law enforcement. A survey of Muslim, Arab, South Asian, Jewish, and Sikh New Yorkers revealed that nearly two in five experienced verbal harassment related to their race, ethnicity, or religion, with one in four reporting multiple incidents. Individuals who are more outwardly visible in their religious identity are particularly vulnerable. A large majority (71%) of those surveyed from these communities do not report discrimination when it occurs[1].

---

[1] Madiha Shahabuddin, "The More Muslim You Are, the More Trouble You Can Be": How Government

99.     Additionally, the referenced organizational stigma due to the invidious stereotypes suffered by those of Muslim, particularly Pakistani, origins has been found to result in increased distrust, fear, and regulatory scrutiny suffered by Pakistani business operations[2].

100.     Consistent with the research from Rutgers University and Chapman University, the Defendants' discriminatory treatment of religious Muslims, particularly those of Pakistani origin, is nothing more than a reflection of the research that disproportionally harms Muslim and Pakistani business owners and operations.

101.     In a city and state where Pakistani families experience higher poverty rates [almost 38% live below the poverty rate, inclusive of adults and children] compared to the city's and state's overall population, and a significant percentage of Pakistani individuals and families live below the poverty line, with rates particularly high for children, the tactics of the DOT do nothing more than just encourage that terrible demographic[3].

**d.  The Defendants' Selective Enforcement Against Plaintiff Is An Arbitrary and Unnecessary Barrier to Fair and Equal Treatment Amongst New York's Businesses, As Evident On Its Face.**

102.     In this action, the contention is that Defendants, specifically the DOT, have selectively enforced their regulations and policies against ARB due to the ethnicity and religion of its principal owner, Mr. Bhally, in violation of the Equal Protection Clause.

103.     Defendant DOT has specifically engaged in the unequal treatment of Plaintiff.

104.     Defendants, specifically the DOT, have targeted Plaintiff through aggressive enforcement actions concerning permits, licenses, and issues of operational use of the property,

---

Surveillance of Muslim Americans Violates First Amendment Rights, 18 CHAP. L. REV. 577 (2015). Available at: https://digitalcommons.chapman.edu/chapman-law-review/vol18/iss2/9
[2] Ali R. Chaudhary, "Ascriptive Organizational Stigma and the Constraining of Pakistani Immigrant Organizations, International Migration Review 1-24 (2020). Available at: https://csrr.rutgers.edu/wp-content/uploads/2020/07/chaudhary_2020_imr.pdf
[3]   Asian American Federation, "Profile of New York City's Pakistani Americans" (2020). Available at: https://www.aafederation.org/wp-content/uploads/2020/12/2019pk.pdf

while failing to pursue similar actions against other, similarly situated businesses operating parking lots on or near the same premises. These other businesses were and/or are not owned or managed by individuals of Pakistani descent or Muslim faith, particularly Long-Term Parking Lot 9, JFK Long Term Parking Inc., C&D JFK Long Term Parking, Purchase Park 2 Fly, and Bolt Parking, LLC.

105.    The DOT has knowledge of violations regarding use permits **by these and other parking facilities engaging in such behaviors openly, and literally advertise on Google and other vendor websites,** but despite this knowledge, the DOT DOES NOT pursue them with the same intensity or aggression as it did to Plaintiff. In fact, we understand that they did not investigate this at all.

106.    The DOT's selective enforcement against ARB was and has been motivated by an intent to discriminate against Plaintiff on the basis of ethnicity [Pakistan] and religion [Muslim].

**e.  Specific Facts Evidencing The Discriminatory Intent:**

107.    By now, it should be clear that based on their acts of unequal treatment, the knowledge of the violations engaged in by the non-Pakistani and non-Muslim individuals and businesses, the clear discriminatory motive engaged in by the DOT is beyond question, and the evidence is on its face:

      a.  The DOT has sent the agents to threaten, harass, and intimidate.

      b.  The DOT has sent in multiple agents to cause distress.

      c.  The DOT has actively used their position of power within New York State to trigger other agencies to harass, discriminate, oppress, and intimidate Plaintiff, aiming to remove and block them from operations.

108. As stated above, we know at least 14 similarly situated comparators who physically operate at the location, and the owners do not hold either DCWP licenses or use permits. These similarly situated entities are not subject to enforcement, and the only element that separates them from Plaintiff is that Plaintiff is a Muslim and a Pakistani.

109. It is clear that these other businesses are not subject to the same standards that the DOT holds against Plaintiff. It is also clear that Defendants have engaged in a deviation from the standard established procedures.

110. Defendants have not acted consistently with previously held policies of engaging as such on the Premises. For example, Purchase Park 2 Fly and Mr. Preza, of whom it is the Plaintiff's understanding that he actually managed to get a new contract or agreement with the DOT to operate. Meanwhile, he continues operations without being licensed through the DCWP, simply because he is not a Muslim and Pakistani! Period!

111. In addition to selective enforcement and class of one claim, [t]here are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause (See *Brown*, 221 F.3d at 337). To sustain an equal protection claim, a plaintiff may also rely on (1) a law that makes classifications based explicitly on a protected class, including race, (2) a facially neutral law or policy that has been applied in a discriminatory manner, or (3) a facially neutral policy that has an adverse effect and was motivated by discriminatory animus. The purpose of this reference is to advise that it is very possible that discovery, when we seek true and correct copies of the policies that govern enforcement for the DOT, may very well be that the policy on its face is discriminatory.

112. Given the obvious overlap between cases where the law has been selectively enforced (a theory that requires a plaintiff to present comparator evidence), and cases where a

facially neutral law has been applied in a discriminatory manner (a theory that does not require comparator evidence), some courts have distinguished these two theories by identifying a selective enforcement case as one where a plaintiff challenges the defendant's application of the law as enforced against the plaintiff, as opposed to a "discriminatory application" case, where the law is applied in some other discriminatory manner (See *White v. City of New York*, 206 F. Supp. 3d 920, 930-31 (S.D.N.Y. 2016)).

113.    Irrespective of how this Court ultimately characterizes the discriminatory treatment of Plaintiff, the fact of the matter will always remain the same:

   a. Defendants have outright targeted Plaintiff through aggressive enforcement actions concerning permits, licenses, and issues of operational use of the property, while failing to pursue similar actions against other, similarly situated businesses operating parking lots at or near the same Premises.

   b. The only difference between those other businesses and Plaintiff's is that those other businesses are not owned or managed by individuals of Pakistani descent or Muslim faith.

   c. The DOT has knowledge of other parking facilities violating the same regulations regarding use permits.

   d. Despite having explicit knowledge, the DOT has not pursued these other businesses with the same intensity or aggression as it did to Plaintiff.

   e. The DOT's selective enforcement against ARB was and has been motivated by an intent to discriminate against it based on ethnicity and religion. There is literally no other reason why at least 14 other similarly-situated entities can operate on the property in the same fashion, but don't face similar enforcement.

114.    The Defendant's acts took place against the backdrop of anti-Muslim sentiment and discrimination often experienced by Pakistani Muslims. Plaintiff is unique because he is the last remaining Muslim and Pakistani-owned and operated parking lot on the Premises that was actually licensed with the DCWP. While there are several other parking lot operations on the property, of which we believe there are at least 14 other companies, none qualify as Muslim and Pakistani-owned—and for sure none have a license with the DCWP or a valid use permit with the DOT. But for some reason, only Plaintiff is attacked.

115.    Actually, it isn't for "*some reason*," but rather, it is due to the extreme discriminatory animus that the DOT and the other Defendants have against Muslims of Pakistani origin. Their selective and discriminatory enforcement has one goal in mind: reducing Plaintiff to yet another statistic—another member of the 38% living in poverty within New York City.

116.    This discriminatory animus is the sole factor motivating the DOT's behavior and actions, which were not only done in bad faith but also appeared designed to prevent Mr. Bhally and his company from operating the parking lot. The DOT's acts fly in the face of legal standards— they act while appeals are pending, they act while injunctions are in effect, and when they are thwarted, they send other agencies to do their bidding.

117.    The DOT has no interest in ever making this right, in ever curing their discriminatory behavior. Hell, even after ARB and the DOT reached a Settlement Agreement, the DOT continued to act in bad faith. It delayed the drafting of the Settlement, attempted to impose new conditions, and ultimately reneged on the Agreement.

118.    Since December 2021, Defendants have used the long-arm of the law and their endless purse to oppress them—attorney after attorney, employee after employee, whether it comes from the Attorney General's Office, or the New York City Law Department's Office, it has

been an endless fight for Plaintiff for at least 4 years—and now we finally have realized why—Hate! Discrimination! Racism! Fear of Muslim Success! Fear of Pakistani Success!—Fear of a culture that is currently being bombed into peace.

119.    This pattern of behavior demonstrates a discriminatory intent by Defendants, particularly by the DOT, and sanctioned by the Commissioner and by SONY, targeting ARB due to Mr. Bhally's Pakistani-Muslim background. Sadly, and as expected, the DOT's actions have caused significant financial harm and emotional distress to Mr. Bhally and ARB.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### EQUAL PROTECTION VIOLATION 42 U.S.C. § 1983 AND FOURTEENTH AMENDMENT
### (against all Defendants)

120.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

121.    The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution mandates that "all persons similarly situated should be treated alike."

122.    Plaintiff ARB was and has not been treated the same as others, similarly situated parking lot businesses operating in the vicinity of 120-20 152d Avenue, 128-20 152d Avenue, South Ozone Park, New York 11420, County of Queens. Specifically, at least 14 other similar parties, including, but not limited to Long Term Parking Lot 9, JFK Long Term Parking Inc., C&D JFK Long Term Parking, Purchase Park 2 Fly and Bolt Parking, LLC, all of which have owners not belonging to the Muslim religion or of Pakistani descent.

123.    Despite knowledge of numerous parking facilities violating the same regulations regarding the use of permits, these other entities engage in such behaviors openly, and literally advertise on Google, other vendor websites, etc. Despite this knowledge, the DOT does not pursue

these other businesses with the same intensity or aggression as it did to Plaintiff. In fact, it is our understanding that they did not investigate this at all.

124. Defendant DOT, acting under the color of state law, treated Plaintiff differently from the aforementioned similar parties without any legal justification.

125. Defendant DOT had no rational basis to treat Plaintiff differently from the bigger corporations in issuing fines and enforcing the collection of those fines.

126. As a direct and proximate result of the above-described unlawful actions by Defendants, Plaintiff has suffered emotional distress, reputational damage, and economic losses.

**SECOND CAUSE OF ACTION**
**EQUAL PROTECTION VIOLATION 42 U.S.C. § 1983 AND FOURTEENTH AMENDMENT (RELIGIOUS ANIMUS & NATIONAL ORIGIN)**
**(against all Defendants)**

127. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

128. Plaintiff Mr. Bhally believes that ARB was treated differently because he, openly as a Muslim man and Pakistani, was running the company. Plaintiff believes that Defendants have shown a discriminatory animus toward Muslims and those of Pakistani descent.

129. Upon information and belief, Plaintiff believes that in December 2021 and continuing through the present, the DOT selectively enforced permits, licenses, and issues of operational use of the property, while failing to pursue similar actions against others, similarly situated businesses operating parking lots on or near the same Premises, solely due to the Plaintiff's religion [Muslim] and national origin [Pakistani].

130. Accordingly, the Defendants' acts, policies, and practices constitute discrimination. As a direct and proximate result of the above-described unlawful actions by Defendants, Plaintiff has suffered emotional distress, reputational damage, and economic losses.

### THIRD CAUSE OF ACTION
### MALICIOUS PROSECUTION 42 U.S.C. § 1983 AND FOURTH & FOURTEENTH AMENDMENT
### (against all Defendants)

131.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

132.    By their conduct, as described herein, and acting under the color of state law, all Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation of the Plaintiff's constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

133.    The DOT initiated proceedings against ARB (Notice of Violation, OATH referrals, Civil Court Petition, multiple forum lawsuits), and each of these proceedings lacked any true good faith motive, were predicated on false pretenses, and were predicated on evidence that should have been considered inadmissible, or low-quality evidence, suggesting a malicious motivation.

134.    The DOT acted while appeals are pending, while injunctions are in effect, and when they are thwarted, they send other agencies to do their bidding.

135.    As a direct and proximate result of the above-described malicious actions by Defendants, Plaintiff has suffered emotional distress, reputational damage, and economic losses.

### FOURTH CAUSE OF ACTION
### MALICIOUS PROSECUTION (STATE LAW)
### (against all Defendants)

136.    The above paragraphs are hereby incorporated by reference as though fully set forth herein.

137.    Defendant DOT, acting through its agents, initiated a series of legal proceedings and enforcement actions against Plaintiff ARB. These actions include, but are not limited to:

    a.   The issuance of a Notice of Violation (NOV) on or about April 1, 2022, alleging illegal operation of a long-term parking facility in violation of Highway Law § 52;

    b.   Refusal to uphold the terms of a Settlement Agreement reached on May 17, 2022, after a hearing in open court, effectively reviving baseless claims and penalties;

    c.   Encouraging and requesting assistance from the DCWP to rescind the License of ARB, on concocted allegations that ARB was in violation of Highway Law § 52, and the Notice of Violation, and that Plaintiff was essentially unable to maintain their DCA license, leading to its immediate termination.

    d.   Civil Court Petition, Case # LT-31716-24/QU, for the removal of Plaintiff from the property and to secure reasonable value for the occupancy from Feb. 14, 2022, through the vacate date;

138.    Defendant DOT lacked the adjudicative requirements that would have justified stripping Plaintiff of their constitutionally-protected License and property, necessary for the aforementioned actions, which is only exacerbated by:

    a.   The DOT's acceptance and cashing of monthly permit fees from ARB, creating an understanding of the legitimate use of the property at the fee originally offered by Plaintiff in December 2021.

    b.   The reaching of a Settlement Agreement in open court, which indicated the DOT had determined there was no illegal activity sufficient to warrant a $1,000 per day fine and was, in fact, willing to reduce it to $25 per day. The final order was for a reduced fine.

    c.  That despite a valid and constitutionally protected DCWP License, the DOT would continue to attack Plaintiff only, while other businesses were NOT licensed, showing that they did not believe there was any probable cause, but were acting in an effort to simply discriminate against Plaintiff.

    d.  The fact that other parking facilities are operating on the Premises do NOT have a license, while Plaintiff had a constitutionally-protected one [until, as a result of the collective efforts of Defendants, now Plaintiff has been illegally stripped of their License, notwithstanding an active injunction].

    e.  That there was no need to seek the action in a Civil Court proceeding since all issues were in the Original Supreme Court hearing, but it was only done to further discriminate and harassment Plaintiff.

139.    Defendant DOT acted with malice, which may be inferred from the totality of the circumstances, including, but not limited to:

    a.  The discriminatory targeting of ARB based on the religious and national origin of its owner, Mr. Bhally, as compared to other similarly situated businesses;

    b.  The DOT's refusal to engage in good-faith negotiations or uphold valid agreements;

    c.  The DOT's aggressive and intimidating conduct toward Plaintiff;

    d.  Inconsistent behavior in seeking a separate determination against Plaintiff, meanwhile ignoring that Plaintiff was the only party on the property with a true and valid DCWP License, was now being challenged.

140.    The prosecution (including actions to challenge the DCWP License) was terminated in the Plaintiff's favor with a stay of the decision, as well as the case in civil court, and

the original court still stands at the time of the appeal. This is supported by the DOT's action, the Hearing before the ALJ, and by a motion to stay, which was granted.

141.    Accordingly, Defendant DOT violated the Plaintiff's Fourth and Fourteenth Amendment rights, including the right to be free from unreasonable seizure and malicious prosecution.

142.    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff sustained the damages hereinbefore alleged, including, but not limited to, financial losses, reputational damage, emotional distress, and attorney fees.

### FIFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (STATE LAW)
**(against all Defendants)**

143.    Plaintiff repeats and realleges the allegations above as if the same were set forth at length herein.

144.    Defendants knew that by engaging in the aforesaid selective prosecution and enforcement of the permits, licenses, and issues of operational use of the property, and their fines, while failing to pursue similar actions against others, similarly situated businesses operating parking lots on or near the same Premises, the Plaintiff's business and personal well-being would be harmed.

145.    Plaintiff has suffered severe emotional distress as a direct result of the Defendants' actions.

146.    The Defendants' conduct of isolating and discriminating against ARB and Mr. Bhally was extreme and outrageous.

147.    Defendants either intended to cause and/or consciously disregarded the substantial probability of causing severe emotional distress to Plaintiff.

148.    Resultantly, Plaintiff has lost numerous business opportunities due to the aforesaid actions, including lost income for Plaintiff, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. 1983 – MUNICIPAL LIABILITY
### (against all Defendants)

149.    Plaintiff repeats and realleges each and every allegation previously discussed, inclusive, as though fully set forth herein.

150.    The actions were directly from the DOT, and because they have deviated from what a reasonable person can consider normal practices, they are illegal.

151.    For example, it is the Plaintiff's understanding that Mr. Anthony Preza, the principal of Purchase Park 2 Fly, was actually able to secure a new contract or agreement with the DOT to operate. However, he continues to operate without a license from the DCWP.

152.    The foregoing policies and/or practices are unconstitutional.

153.    The foregoing policies and procedures promulgated or adopted by Defendants, in existence at the time of the incidents giving rise to this action, violated federal law on their face or were intended to deprive citizens such as Mr. Bhally and his business of their constitutional rights.

154.    Plaintiff sustained injuries as a result of the Defendants' unconstitutional policies.

155.    The aforementioned actions of Defendants resulted from, and were taken pursuant to, the above-mentioned de facto policies and/or well-settled and widespread customs and practices of Defendants.

156.    Defendants are liable and responsible for all injuries resulting from their deliberate indifference to these unconstitutional practices.

157.    The actions set forth in this claim for relief are, and were, the proximate cause of the injuries (as defined above), including (but certainly not limited to) the attempted financial ruin

of Plaintiff and ARB, the confiscation of the Plaintiff's License, as well as their rightful possession

of the property, and the Plaintiff's inability to work effectively in their industry as a short and long

term parking lot–that is, lost earnings–because of the confiscation of the Plaintiff's DCWP License,

Use Permit, and other necessary items to operate ARB.

**SEVENTH CAUSE OF ACTION**
**THE NEW YORK STATE HUMAN RIGHTS LAW (N.Y. EXEC. LAW § 296(5))**
**(against all Defendants)**

158.    Plaintiff repeats and realleges each and every allegation previously discussed,

inclusive, as though fully set forth herein.

159.    The Defendants' acts, policies, and practices of (i) targeting Plaintiff using

aggressive enforcement actions concerning permits, licenses, and issues of operational use of the

property, while failing to pursue similar actions against others, similarly situated businesses

operating parking lots at or near the same Premises, (ii) having knowledge of other parking

facilities violating the same regulations regarding use permits, but ignoring those violations and

solely attacking Plaintiff, (iii) despite having clear knowledge, the DOT did not pursue these other

businesses with the same intensity or aggression as it did to Plaintiff, (iv) selectively enforcing

policies solely on the basis of Mr. Bhally's ethnicity and religion, (v) sending in agents in to

threaten, harass, and intimidate Plaintiffs, (vi) sending in agents to cause distress to Plaintiffs, (vii)

actively using their position of power within New York State to trigger other agencies to harass,

discriminate, oppress and intimidate Plaintiff, seeking to remove and block them from operations,

(viii) engaging in a deviation from their standard established procedures, and (ix) failing to act

consistently with previously held policies of engaging as such on the Premises, is done solely to

discriminate Plaintiffs on the basis of religion and national origin.

160.    Defendants selectively used aggressive and unconstitutional enforcement actions solely against Plaintiff solely because of his Muslim or Pakistani background.

161.    This policy, in light of the Defendants' related acts and practices, has an adverse and unjustified disproportionate impact on Muslim and Pakistani individuals as compared to similarly situated non-Muslims and non-Pakistani individuals and businesses.

162.    This policy, in light of the Defendants' related acts and practices, is not necessary to serve any substantial, legitimate, nondiscriminatory interest, and any such interest can be satisfied by another practice—like actually following the rules—that would have a less discriminatory effect.

163.    The Defendants' acts, policies, and practices constitute discrimination and violate New York Executive Law § 296(5), and how this law's regulations and enforcement are implemented, particularly since the Defendants' acts, policies, and practices have made and continue to encourage a discriminatory impact on Muslims, particularly of Pakistani descent, because of religion or national origin, in violation of N.Y. Exec. Law § 296(5).

164.    As a direct and proximate result of the above-described malicious actions of Defendants, Plaintiff has suffered emotional distress, reputational damage, and economic losses.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. § 1983, ET SEQ. – RETALIATION
### (against all Defendants)

165.    Plaintiffs repeat and reallege each and every allegation previously discussed, inclusive, as though fully set forth herein.

166.    Under the Fourteenth Amendment of the Constitution of the United States of America and 42 U.S.C. § 1983, Plaintiffs have the right to be free from retaliatory actions from state actors.

167.    Plaintiffs, through their actions of protecting, advocating, and attempting to protect their legal position, and continuing this defense, have drawn the ire and hate of the DOT officials.

168.    For clarification, Plaintiff ARB, through Mr. Bhally, has engaged in the following protected activities:

    a.    Opposed the discriminatory treatment and selective enforcement it has suffered;

    b.    Objecting to excessive and unreasonable terms and fees, particularly related to permit # 1428;

    c.    Opposing the Notice of Violation and all charges thereafter;

    d.    Seeking relief in state courts, by way of lawsuits and petitions, particularly due to the discriminatory behavior of Defendants;

    e.    This includes, but was not limited to, (i) the January 20, 2023 Article 78 petition, (ii) the December 11, 2023 Article 78 petition, (iii) the continued appeal with the Appellate Department, (iv) the appeal and opposition to the oppressive behavior of the DOT in the Civil Court proceeding.

169.    Defendants were aware of Plaintiffs' participation in one or more of these protected activities, including, but not limited to, objecting to illegal terms, filing action with the courts, and the filing of the original lawsuit, and their refusal to accept the DOT's discriminatory practices.

170.    The DOT took adverse actions against Plaintiffs in the form of issuing false notices, attempting to seek assistance and pressuring other state agencies, and refusing to work with the Plaintiffs for purposes of resolving this matter, showing, with full knowledge, a complete disregard for a fair review of the matter.

171.    The adverse actions taken by Defendants began in May 2022, during the timeframe of the May 17, 2022 Settlement and Agreement, including the illegal revocation of a bargained-for Settlement in a full court hearing.

172.    The actionable adverse actions continued when it was realized there was some serious litigation against them based on a clear motive based on their religion (Muslim) and national origin (Pakistani).

173.    As a result of the Defendants' actions, particularly their involvement in the matters with the DCWP, and particularly because Defendants' continue to assert that Plaintiff is in violation of the law while, at the same time, refusing to wait until the matter is fully adjudicated thorough the Original Proceeding in the Supreme Court, Plaintiff ARB lost its DCWP License and is going to be permanently blocked unless the Court intervenes and demands that Defendants cease and desist form the discriminatory behavior and reinstate the License immediately.

174.    As a result of the Defendants' illegal and discriminatory actions, the DCWP has revoked the Plaintiff's DCWP License and refuses to reinstate it.

175.    A causal connection exists between the protected activities, the adverse actions, and the Injuries.

176.    The actions set forth in this claim for relief are, and were, the proximate cause of the injuries (as defined above), including (but certainly not limited to) the attempted financial ruin of Plaintiff and the business, the confiscation of the Plaintiff's license, as well as their rightful possession of the property, and the Plaintiff's inability to work effectively in their industry as a short and long term parking lot –that is, lost earnings–because of the confiscation of the Plaintiff's DCWP License, Use Permit, and other necessary items to operate ARB.

## NINTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. 1983 – FAILURE TO INTERVENE
### (against the State of New York Defendants)

177.    Plaintiff repeats and realleges the allegations above as if the same were set forth at length herein.

178.    Under the Constitution of the United States of America and 42 U.S.C. 1983, investigators, inspectors, supervisors, managers, attorneys, employees of the DOT, employees of SONY (and other state actors) have an affirmative duty to protect the constitutional rights of citizens by intervening when other state actors commit constitutional violations in their presence.

179.    It is clear that just based on the hierarchy alone, one or more of the DOT Defendants violated the Plaintiff's constitutional rights when, in their presence, one or more of the other state actors of Defendants improperly trespassed on the Plaintiff's property, confiscated their License or otherwise property, and did so on numerous occasions, notwithstanding the active injunction prohibiting such behavior at least until the appeals were determined.

180.    The state actors, on behalf of Defendants, and their actions or inactions caused Plaintiff to sustain the Injuries.

181.    The state actors, on behalf of Defendants, took the aforementioned (in)actions against Plaintiff during the course and within the scope of employment with Defendant State of New York.

182.    The (in)actions taken by the state actors on behalf of Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitled Plaintiff to punitive damages in an amount to be determined at trial.

183.    The actions set forth in this claim for relief are, and were, the proximate cause of the injuries (as defined above), including (but certainly not limited to) the attempted financial ruin

of Plaintiff and the business, the confiscation of the Plaintiff's license, as well as their rightful possession of the property, and the Plaintiff's inability to work effectively in their industry as a short and long term parking lot–that is, lost earnings–because of the confiscation of the Plaintiff's DCWP License, Use Permit, and other necessary items to operate their business.

## PRAYER FOR RELIEF

*WHEREFORE*, Plaintiff ARB Park Inc. respectfully requests that this Court grant the following relief:

a. Enter a declaratory judgment finding that the foregoing actions of Defendants violate 42 U.S.C. § 1983, the Fourteenth Amendment of the Constitution of the United States of America, and all other applicable laws.

b. Enjoin Defendants and their directors, officers, agents, and employees from continuing to engage in the illegal, discriminatory conduct described herein, and direct Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future, including full reinstatement of the Plaintiff's Use Permit for the property, under the original monthly costs of approximately $30,000, expungement of the record so that Plaintiff may secure their DCWP License again, and any other permits or licenses wrongfully revoked or denied.

c. Award compensatory damages to Plaintiff in an amount to be determined at trial that would fully compensate Plaintiff for all Injuries caused by the conduct of Defendants alleged herein, but not less than $2,000,000.

d. Award punitive damages to Plaintiff in an amount to be determined at trial that would punish Defendants for the willful, malicious, and reckless conduct alleged herein and that would effectively deter similar conduct in the future, but not less than $2,000,000.

e. Award Plaintiff reasonable attorneys' fees, costs, and expert fees incurred during this action pursuant to 42 U.S.C. § 1988(b) and (c), N.Y. Executive Law § 297(10), and any other applicable law, the determination of which lies within the sound discretion of this Court.

f. Award Plaintiff all statutory interest on any sums awarded.

g. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury for all issues a jury may properly decide and for all the requested relief that a jury may award.

Respectfully Submitted,

Dated:   Astoria, New York
         July 10, 2025

Frank Seddio, Esq.
**Seddio & Associates, P.C.**
1 Metrotech Center, Suite 1803
Brooklyn, New York 11201
(718) 272-6040
fseddio@seddiolaw.com

Vincent Miletti, Esq.
**MILETTI LAW, P.C.**
10 Halletts Point, Suite 1742
Astoria, New York 11102
(609) 353-6287
vmiletti@milettilaw.com
*Co-counsel to Plaintiff* Vincent Miletti, Esq.

To:    New York City Managing Attorney's Office
Office of the New York State Attorney General
28 Liberty Street, 16th Floor
New York, NY 10005
(800) 771-7755 (Phone)
*Attorney for Defendants*

Timothy B. Lennon, General Counsel
New York State Department of Transportation
Division of Legal Affairs
50 Wolf Rd
Albany, New York 12232
(518) 457-2411
*Attorney to be Noticed*

Marie Therese Dominguez, Commissioner
New York State Department of Transportation
Division of Legal Affairs
50 Wolf Rd
Albany, New York 12232
(518) 457-2411
*Attorney to be Noticed*

## **VERIFICATION**

STATE OF NEW YORK     )

)

COUNTY OF KINGS     )


MR. ABDUL BHALLY hereby attests, affirms, verifies, deposes, and says that he is the Plaintiff in this matter, that he has read the foregoing Verified Complaint and that he believes that the facts set forth therein are true and correct to the best of his knowledge, information, and belief. MR. ABDUL BHALLY's knowledge, information, and belief are based on personal knowledge of the facts of this case.


_____
ABDUL BHALLY


Sworn to me, the undersigned, before this day, July 10, 2025


_____
NOTARY PUBLIC


VINCENT MILETTI, ESQ.
Notary Public - State of New York
No. 02MI6380851
Qualified in Kings County
My Commission Expires 09/10/2026

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

ARB PARK, INC.

Plaintiff,

– against -

THE STATE OF NEW YORK, THE NEW YORK STATE
DEPARTMENT OF TRANSPORTATION, and the
Commissioner of Transportation, MS. MARIE THERESE
DOMINGUEZ,

Defendants

Index No. _____

**CERTIFICATE OF
MAILING**

 

Vincent Miletti, Esq., being duly sworn, deposes and says, deponent is not a party to the action, is over eighteen (18) years of age, and has his principal office in Astoria, New York. On July 10, 2025, I served a copy of the following documents:

## SUMMONS & VERIFIED COMPLAINT

by way of the following check items:

☐ Email          ☐ Certified Mail
☑ Regular Mail    ☑ NYSCEF

For purposes of regular mail, or certified mail, such was done by depositing true copies of the same in a postpaid properly addressed wrapper, by first class mail, return receipt requested, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, to the following:

Marie Therese Dominguez, Commissioner
New York State DOT, Legal Affairs
50 Wolf Rd
Albany, New York 12232

Timothy B. Lennon, General Counsel
New York State DOT, Legal Affairs
50 Wolf Rd
Albany, New York 12232

New York City Managing Attorney's Office
Office of the New York State Attorney General
28 Liberty Street, 16th Floor
New York, NY 10005

Sworn to, under the penalties of perjury,

_____
Mr. Vincent Miletti, Esq.